UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT E. GRIEMSMANN, ) CASE NO. C08-1592-TSZ
)
    Plaintiff, )
)
    v. ) REPORT AND RECOMMENDATION
) RE: SOCIAL SECURITY DISABILITY
MICHAEL J. ASTRUE, Commissioner ) APPEAL
of Social Security, )
)
    Defendant. )
_____ )

Plaintiff Kurt E. Griemsmann proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REVERSED AND REMANDED FOR AN AWARD OF BENEFITS.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1956.[1] He has a high school education, attended some

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

community college, and previously worked as a carpenter. (AR 95, 148.)

Plaintiff filed an application for DI and SSI benefits on September 29, 2005, alleging disability beginning July 2, 2005. He is insured for DI benefits through September 30, 2009. (AR 15.) Plaintiff's application was denied at the initial level and on reconsideration. Plaintiff timely requested a hearing. On March 24, 2008, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff. (AR 39-67.) On June 18, 2008, the ALJ issued a decision finding plaintiff not disabled. (AR 15-23.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on October 3, 2008 (AR 6-9), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's lumbar degenerative disc disease and right shoulder rotator cuff tear severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional

capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform the full range of light work with occasional postural movements and frequent overhead reaching with the right upper extremity. With that assessment, the ALJ found plaintiff unable to perform his past relevant work as a carpenter. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Applying the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found plaintiff capable of performing a significant number of jobs that exist in the national economy and, therefore, not disabled.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred by failing to find his depression a severe mental impairment at step two of the sequential analysis, by failing to find his back impairment equivalent in severity to a listing impairment at step three, in finding him not fully credible, by failing to consider all of his non-exertional limitations in the RFC assessment and, therefore, by

erroneously utilizing the Medical-Vocational Guidelines at step five. He requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence, applied correct legal standards, and should be affirmed.

## Credibility Determination

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff contends that the ALJ erred in finding him not credible, arguing that the ALJ failed to provide a legally sufficient basis for rejecting his pain testimony as to the degree of his pain and limitations. The ALJ noted that plaintiff testified his back and shoulder problems

prevented him from working. (AR 19 ("He had difficulty with prolonged sitting, standing, and moving about. He had a right shoulder injury, and severe lower extremity pain. He estimated that he could lift up to 10 pounds.")) The ALJ acknowledged the responsibility to make a finding as to the credibility of plaintiff's statements "about the intensity, persistence, or functionally limiting effects of pain or other symptoms…based on a consideration of the entire case record" if plaintiff's statements "are not substantiated by objective medical evidence". (*Id.*) In that regard, the ALJ made the following findings:

> After considering the evidence of record, the undersigned finds that the [plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(AR 19.)

Although the ALJ goes on to discuss the medical evidence, he does not return to the issue of plaintiff's credibility. While acknowledging the duty to make this assessment if plaintiff's statements "are not substantiated by objective medical evidence", the ALJ reaches no such conclusion. Nor does the ALJ explicitly find plaintiff not credible by virtue of his self-description of his daily activities. At the most, the ALJ concludes that plaintiff's daily activities "are consistent with the residual functional capacity determination in this case", an example of circular reasoning that does nothing to explain why the ability to take 20 minute walks twice a day, to sit for 30-45 minutes, lift 10 pounds, and do light household chores, as testified to by the plaintiff (AR 47, 50, 51, 57), is evidence of the ability to lift up to 20 pounds, do "a good deal" of walking or standing, or sit "most of the time", as light work is defined in the

regulations. 20 C.F.R. §§ 404.1567(b), 416.967(b). Certainly, the ALJ's recitation of plaintiff's daily activities does not include the "specific findings relating to [the daily] activities" and their transferability that is necessary to reach the conclusion that a claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

In response to plaintiff's contention that the ALJ failed to provide a legally sufficient basis for rejecting his testimony, the Commissioner discusses the medical evidence at some length and expands on the ALJ's discussion of plaintiff's daily activities. Notwithstanding the Commissioner's effort to discern a reasonable justification to find plaintiff's subjective complaints not fully credible, plaintiff correctly notes that the ALJ failed to specifically identify what testimony was not credible and what evidence undermines the plaintiff's complaints. *See*, *e.g.*, *Blakes*, 331 F.3d at 569 ("[R]egardless of whether there is adequate evidence in the record to support an ALJ's decision, the ALJ must articulate the grounds for her decision, building an accurate and logical bridge between the evidence and her conclusion because we confine our review to the reasons supplied by the ALJ.") (citing *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

The ALJ's negative credibility finding about plaintiff's statements about the intensity, persistence and limiting effects of his symptoms are not supported by substantial evidence. When the ALJ's reasons for rejecting a plaintiff's testimony are legally insufficient, the appropriate remedy is to remand the case for an award of benefits if it is clear from the record that the ALJ would be required to determine the plaintiff disabled if the testimony had been credited. *Orn*, 495 F.3d at 639 (citing *Connett v. Barnhart,* 340 F.3d 871, 878 (9th Cir. 2003));

*accord McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). To make this determination requires consideration of plaintiff's remaining assignments of error.

### Step Two Mental Impairment

At step two, plaintiff must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." (*Id.*) (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. (*Id.*)

Plaintiff assigns error to the ALJ's determination that he does not have a severe mental impairment. Plaintiff avers that the ALJ relied on outdated assessments, and that the medical evidence establishes his depression subsequently worsened, causing significant impairment of functioning. In particular, plaintiff cites the records from the Interfaith Clinic, including a consultation at Interfaith Clinic Behavioral Health and counseling records from the Interfaith Mental Health Partnership Project, as well as the DSHS psychological evaluation by Dr. Ellen Lind and the assessment at the Whatcom Counseling and Psychiatric Clinic. Plaintiff takes issue with the ALJ's consideration of these records, contending the lack of persuasiveness of

the treatment notes cited by the ALJ and the disregard of other, more relevant, notes.

The Commissioner disputes any error in the ALJ's consideration of the opinions of nurse practitioner Muriel Handschy and licensed mental health counselor Bob Poole, noting that these individuals do not qualify as "acceptable medical sources" for purposes of diagnosing medically determinable impairments. 20 C.F.R. §§ 404.1513(a), 416.913(a). The Commissioner asserts that the ALJ was not bound to adopt the opinion of psychologist Dr. Lind, or any provider, as to either the existence of an impairment or the ultimate determination of disability. *Tonapetyan v. Halter*, 242 F.3d 1114, 1148 (9th Cir. 2001). Further, the Commissioner argues, the ALJ was justified in giving Dr. Lind's report "scant weight" because it did not mention specific clinical findings, was not supported by the longitudinal record, was based largely on plaintiff's non-credible description of his symptoms, and contained speculation. (AR 17-18.) The Commissioner points out that the treatment notes from the providers at Interfaith Community Health Center contain minimal mention of depression (AR 437-38, 440, 442-43.) The Commissioner cites the opinions of reviewing psychologist Dr. Burton and examining physician Dr. Parlatore as support for the ALJ's conclusion that plaintiff did not suffer from a medically determinable mental impairment. (AR 179-92, 314-17.)

In considering the presence of a severe mental impairment at step two, the ALJ found as follows:

> There is some evidence of a mental condition. The [plaintiff] said that he had a history of heroin abuse, now in remission. The [plaintiff] underwent substance abuse treatment in early 2005. The [plaintiff] said that he had difficulty with sustained concentration and memory.
>
> Examinations following chemical dependency treatment show that the [plaintiff] improved and was quite well. Anselm Parlatore, M.D., examined the

[plaintiff] in May 2006 and diagnosed opiate dependence in remission, with a GAF of 65. In his opinion, any limitations were physical, not mental. That is consistent with the mental status examination which, although brief, was entirely normal.

Ellen Lind, Ph.D. prepared a psychological assessment in May 2007, diagnosing the [plaintiff] with depression and opioid dependence in remission, and a range of moderate to marked limitations. Dr. Lind did not mention specific clinical findings, but based her report largely on the [plaintiff's] description of his symptoms, largely his pain allegations, along with some speculation on possible effects on social functioning. This assessment is not given much weight. To be fair, Dr. Lind referred to counseling by someone named "Peg Davies"; those records were not made available. However, there are mental treating reports. They show that the [plaintiff's] mental status presentation was within normal limits. Indeed, the Interfaith treatment notes are not particularly supported by the longitudinal record, or the characterization of his depression as no more than "mild." Those notes do not support significant mental impairment and Dr. Lind's report is given scant weight.

In March 2008 the [plaintiff] was seen at Whatcom Counseling and Psychiatric Clinic. He was assessed with depression and substance abuse in remission, and a GAF of 52. This was based on subjective statements, but his mental status functioning was essentially normal. That testing is not consistent with that GAF assessment.

DDS reviewing sources concluded that the [plaintiff] had no medically determinable mental impairment. The undersigned agrees. The [plaintiff's] sole mental impairment is heroin addition [sic], in remission since July 11, 1005. It imposes no limitations in daily living activities, social functioning, concentration, persistence, and pace. There have been no episodes of decompensation. For these reasons, the [plaintiff] does not have a severe mental impairment.

(AR 17-18; internal citations to administrative record omitted.)

The Commissioner correctly argues that a finding of a medically determinable impairment requires a diagnosis by an "acceptable medical source". 20 C.F.R. §§ 404.1513(1), 416.913(a). Examining psychologist Ellen Lind Ph.D. is an "acceptable medical source" as defined by the regulations, but the Commissioner argues that the ALJ properly rejected her opinion "because it did not mention specific clinical findings, was not supported by

the longitudinal record, was based largely on Plaintiff's non-credible description of his symptoms, and included speculation as to the possible effects on his social functioning". (Dkt. 16 at 10.)

These reasons do not survive scrutiny. The ALJ did not find that Dr. Lind's opinion was unsupported "by the longitudinal record." (AR 18.) Rather, the ALJ made this finding with regard to the treatment notes from the Interfaith Community Health Center. (AR 397-461.) Moreover, Dr. Lind's report does articulate specific clinical findings with regard to such symptoms as "depressed mood", "verbal expression of anxiety or fear", and "hallucinations", "hyperactivity", and the degree of severity of each, ranging from "none" to "severe". (AR 369.) The ALJ does not explain what other "clinical findings" would be required to substantiate a diagnosis of a mental impairment. The ALJ characterizes Dr. Lind's assessment of plaintiff's functional limitations as "speculation on possible effects on social functioning", but there is no evidence Dr. Lind disregarded the evaluation form instructions to: "Base the degree of limitation on reports by the individual and others concerning behavior over the past month and interpretation of appropriate tests, along with your own observation during the interview." (AR 370.)

The ALJ discounted Dr. Lind's opinion primarily for the reason that the doctor "based her report largely on the [plaintiff's] description of his symptoms, largely his pain allegations" (AR 18.) This finding likewise does not withstand scrutiny. Dr. Lind's Psychological/ Psychiatric Evaluation makes reference to plaintiff's mental functioning and symptomatology, not to his description of his pain complaints. (AR 368-71.) In her evaluation, Dr. Lind noted: "Feels defeated by life. Hopeless. Chronic worries. Lethargic. Worries constantly. Panic

attacks often. Problems with concentration."; "Ongoing problems w/concentration and focus. Forgetful. Hard time sticking with a thought and on daily tasks. Hard time w/motivation daily; has to push himself to get things done." (AR 368-69.) Although the ALJ cited "mental treating reports" as showing plaintiff's mental status presentation was within normal limits, the reports cited by the ALJ in support of that finding are <u>physical</u> treating reports that only incidentally address plaintiff's mental status. (AR 403, 410, 431, 468.) In sum, the Commissioner's argument that the ALJ appropriately rejected Dr. Lind's opinion because it was based on plaintiff's unreliable claims is not well taken.

Nurse practitioner Muriel Handschy and licensed mental health counselor Bob Poole also diagnosed depression. (AR 438, 442-43, 472-480.) While these individuals are not considered "acceptable medical sources,"[2] nevertheless, as "other sources", the ALJ must provide germane reasons for disregarding their opinion. C.F.R. §§ 404.1513(d)(1), 416.913)(d)(1). *See also Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ did not address the opinions of either provider by name, referring only to the treatment facility where each was employed. (AR 18.) As argued by plaintiff, the ALJ's reference to the Interfaith Community Health Center notes (*see* AR 397-461) is ambiguous and contradictory, stating: "Indeed, the Interfaith treatment notes are not particularly supported by the longitudinal record, or the characterization of his depression as no more than 'mild.'" (AR 18.) The Interfaith Community Health Center records <u>are</u> the longitudinal record—plaintiff did not get treatment anywhere else for a similar length of time. Further, nurse Handschy was not the only

---

2 *But see Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (holding that a nurse practitioner's opinion constituted an acceptable medical source where the nurse "worked closely under the supervision" of the doctor such that the nurse was "acting as an agent" of the doctor).

individual at Interfaith Community Health Center providing services to plaintiff. The ALJ did not discuss (and therefore did not provide "germane" reasons for disregarding) the opinion of Lisa Harmon, a behavioral health consultant, who wrote on December 14, 2006: "Cymbalta is not having positive effects on depression, rather it has caused (per [patient]) an increase in poor memory, anxiety and possibly nightmares. Doing well in therapy with Peg Davies[.]" (AR 429.)

In finding plaintiff had no medically determinable mental impairment, the ALJ relied on the opinion of DSHS reviewing psychologist Richard Borton Ph.D. (AR 179-91), who apparently reviewed only the May 2006 examination report of Anselm Parlatore M.D. (AR 314-17). Dr. Borton's report is insufficient by itself to support the ALJ's conclusion, as the report of a non-treating, non-examining physician, even when combined with the ALJ's own observance of the plaintiff's demeanor at the hearing, does not constitute substantial evidence. *Lester*, 81 F.3d at 831. Dr. Parlatore administered a cognitive exam, finding plaintiff had intact memory, concentration, fund of information, and abstraction. He felt with respect to plaintiff's disability: "[S]eems predominately physical in nature and not psychiatric. In terms of his ability to handle stress and focus and concentrate and his pace and persistence they are only mildly affected by any psychiatric symptomatology. There is no impairment of his intellectual capacity to understand, follow and remember both complex and simple instructions and there is no psychiatric reason for problems with his ability to carry out specific tasks in a timely and consistent manner." (AR 317.) However, in light of the more recent treatment records from the Interfaith Clinic, the Whatcom Counseling and Psychiatric Clinic, and the assessment of Dr. Lind, together with the fact that plaintiff was referred for mental health

counseling and developed an extended counseling relationship with Peg Davies, the earlier report from Dr. Parlatore, even though supportive of the ALJ's finding, is not sufficient to constitute substantial evidence in support of the conclusion that plaintiff had no medically determinable mental impairment.

## Listing of Impairment

At step three, the ALJ must consider whether the claimant's impairments meet or equal one of the impairments in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P. Plaintiff bears the burden of proving the existence of impairments meeting or equaling a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ found plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, noting that plaintiff's impairments "do not cause ineffective ambulation or inability to use the upper extremities [and] do not impose significantly limited motor, sensory or reflex loss." (AR 18.) Plaintiff takes issue with this finding, arguing the ALJ's step three finding is *per se* erroneous because of the failure to properly consider his mental impairment at step two. This lack of inclusion, plaintiff argues, means that the consideration of the combination of severe impairments was incomplete. However, plaintiff does not specify which listing he believes he would meet if the mental impairment was considered, or cite to any evidence which would support the findings of a specific listing if this were included in the consideration. *See Burch,* 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.")

Plaintiff further argues that the ALJ erred in rejecting the opinion of examining doctor Milt Schayes, M.D., that his back impairment equaled Listing 1.04, "Disorders of the Spine". Dr. Schayes was asked in a written interrogatory if plaintiff had a spinal disorder which, if not meeting the listing requirements of 1.04, medically equals that listing. Dr. Schayes responded: "Yes. Failed lumbar laminectomy syndrome (surgery on 5-19-95)." (AR 463.) When asked to state the basis for this opinion, Dr. Schayes referenced the history taken from the plaintiff and records review, several examinations, and a review of imaging studies including lumbar MRI scans. (*Id*.) When asked for further clarification (*see* AR 65), Dr. Schayes cited complaints of low back pain with radiating leg pain, limited lumbar range of motion upon examination, weakness of the left ankle dorsiflexors and left great toe extensor, and sensory changes corresponding to the dermatome on the left foot. (AR 462-63.) Further, Dr. Schayes cited the clinical imaging findings as "corresponding very closely" to the specific listing requirements of 1.04(A) and (C). (AR 489.)

The ALJ did not accept this opinion, citing the lack of evidence of positive straight leg raising in either the sitting or standing position, motor loss, nerve room compression, spinal arachnoiditis, pseudoclaudication, or the inability to ambulate effectively. With regard to the limited range of motion, the ALJ noted that it appeared only in extension but not with other movements and the plaintiff was able to walk normally, manage his pain with medication and to do well with physical therapy. (AR 20 (citing AR 224-52, 266-98, 299-313, 323-24, 333, 329, 464-71, 481-88.)) Further, the ALJ gave Dr. Schayes' opinion "scant weight" because he had little actual hands-on treatment of plaintiff. (AR 20 (citing AR 444-45).)

Plaintiff takes issue with this finding, saying Dr. Schayes' opinion presents a "plausible

theory of medical equivalence to a listing", even if the signs and symptoms do not precisely match the listing specifications. (Dkt. 17 at 12.) The Commissioner, however, correctly notes that Dr. Schayes failed to explain how his medical findings either satisfy all of the criteria in Listing 1.04(A) or (C), or are "at least equal in severity and duration to the criteria" of those impairments. 20 C.F.R. §§ 404.1526(a), 416.926(a). Equivalence will be determined "on the basis of a comparison between the 'symptoms, signs and laboratory findings'" of the claimant's impairment and the medical criteria of the listed impairment. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). It is the province of the ALJ to determine medical equivalence. *See* SSR 96-5p. Although Dr. Schayes listed his findings, he did not explain why these findings cause an impairment "at least equal in severity and duration to the criteria" of Listing 1.04, that is, either evidence of nerve root compression, spinal arachoiditis, or lumbar spinal stenosis. Accordingly, the ALJ did not err in rejecting Dr. Schayes' opinion that plaintiff's back impairment was equivalent in severity to Listing 1.04.

Residual Functional Capacity

At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and assess his work-related abilities on a function-by-function basis, including a required narrative discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p. RFC is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining his RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p.

In this case, the ALJ concluded plaintiff had the RFC to perform the full range of light work, with occasional postural movements and frequent overhead reaching with the right upper

extremity. Finding no mental impairment at step two, the ALJ did not assign any related limitations.

Plaintiff contends the ALJ's RFC determination is *per se* incomplete, because of the failure to consider his depression, as well as his sciatica and foot numbness. Plaintiff also takes issue with the ALJ's quantification of the amount of walking involved in light work, contending the required six to eight hours per day is beyond even his abilities as assessed by the ALJ. Other deficiencies in the ALJ's RFC findings identified by plaintiff include a failure to assess appropriate lifting and reaching limitations, his need to alternate between sitting, standing and lying down, as well as other postural limitations. In response, the Commissioner argues the ALJ properly weighed the evidence, discredited plaintiff's subjective symptoms, and provided legally sufficient reasons for incorporating those limitations found by the ALJ to be supported by the evidence.

As previously found, the ALJ erred in the assessment of plaintiff's credibility, specifically, as applied to his testimony about the intensity, persistence and limiting effects of his symptoms. When this testimony is credited, it is apparent the ALJ's RFC assessment is deficient as to plaintiff's abilities. (*See* AR 47-57.) Further, plaintiff has identified other inconsistencies in the ALJ's RFC findings. Dr. Bruce, the orthopedist who treated plaintiff's non-repairable "chronic massive rotator cuff tear", indicated plaintiff had "essentially no functioning cuff" and "should avoid a lot of overhead lifting and reaching[,]" adding that "[t]he prognosis is for ongoing symptoms which may gradually get worse over time." (AR 326.) Although the ALJ indicated Dr. Bruce's opinion was taken into account in assessing plaintiff's RFC (AR 20), this cannot be reconciled with the ALJ's assessment that plaintiff could perform

frequent overhead reaching. (AR 18.) Also, while the ALJ indicated "greater weight" was given to the DDS assessment by Dr. Bernardez-Fu (AR 21, 171-79), that consultant assessed specific postural limitations not incorporated by the ALJ such as occasional balancing, bending, stooping, kneeling, crouching, or climbing ramps or stairs, and never climbing ropes, ladders or scaffolds. (AR 173.) The ALJ included "occasional postural movements" in the RFC without specifying which movements were included, and without accepting or rejecting Dr. Bernardez-Fu's opinion in this regard. Although finding at step four that plaintiff was not able to perform his usual work as a carpenter, the deficiencies in the ALJ's RFC assessment particularly impact the step five determination.

Step Five

At step five of the sequential evaluation process, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). An ALJ may rely on the Medical-Vocational Guidelines ("guidelines" or "grid") to meet his burden at step five. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). "They may be used, however, 'only when the grids accurately and completely describe the claimant's abilities and limitations.'" *Id.* (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). "When a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the testimony of a vocational expert (VE) is required. *Id.* (quoting *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)). *Accord Tackett v. Apfel*, 180 F.3d 1094, 1103-04 (9th Cir. 1999) ("Because Tackett's non-exertional limitations 'significantly limit the range of

work' he can perform, mechanical application of the grids was inappropriate.")

Utilizing the guidelines as a framework, the ALJ found plaintiff capable of performing other work at step five. Plaintiff argues that the ALJ erred in finding that the occupational base of light work was not significantly limited by his non-exertional impairments, and that the ALJ should instead have called upon the services of a VE. As a result, plaintiff contends, the ALJ's step five determination lacks the support of substantial evidence.

If the only error was the lack of consideration of limitations resulting from plaintiff's depression, the ALJ's reliance on the grids might not rise to the level of harmful error. (*See Hoopai v. Astrue*, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (substantial evidence supported the ALJ's conclusion that a claimant's depression, with evidence of various associated moderate limitations, was not a sufficiently severe non-exertional limitation prohibiting reliance on the grids without the assistance of a VE). However, when the postural limitations described above are added, plaintiff's point is well taken. *See Tackett v. Apfel*, 180 F.3d 1084, 1103-04 (9th Cir. 1999) (a claimant's "need to shift, stand up, or walk around every 30 minutes [was] a significant non-exertional limitation not contemplated by the grids[]" and, therefore, "mechanical application of the grids was inappropriate.") Considering these non-exertional limitations cumulatively, substantial evidence does not support the ALJ's determination that the limitations were not sufficiently significant and severe so as to preclude reliance on the grids.

## **CONCLUSION**

For the foregoing reasons, the Commissioner failed to meet his burden at step five of the sequential evaluation process to show that plaintiff is capable of performing other work that

exists in substantial numbers in the economy. Because plaintiff was found not capable of performing his usual and customary work, he is disabled. This case should be remanded for an award of benefits.

DATED this 1st day of October, 2009.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge